**Lester MARTIN, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 484S152.

Supreme Court of Indiana.

March 26, 1986.

Brian May, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Lester Martin was convicted after a jury trial of two counts of murder and was found to be an habitual offender. The trial court imposed concurrent sentences of sixty years for the convictions and added ten years for the habitual offender determination.

Martin raises four issues in this direct appeal:

(1) Whether the evidence is sufficient to sustain his murder convictions;

(2) Whether he effectively waived the right to counsel's assistance in deciding whether to consent to a search of his brother's car;

(3) Whether a proper foundation preceded the admission of two purses, and,

(4) Whether the identification evidence is sufficient to sustain the habitual offender determination.

We affirm.

These are the facts which tend to support the trial court's judgment. On August 3, 1983, Arnetta Townsend saw Martin, a friend of her husband, in the backseat of a car which was headed north on a

lane near her house. This lane led toward a dumping site. There were two or three other people in the car with Martin, but Mrs. Townsend could not discern their sex. Henry Holloway was hunting on the Townsend property that same day. While driving north on the same lane, he saw appellant walking toward him. Holloway noticed what appeared to be blood on appellant's shirt. Allen Townsend and Holloway subsequently discovered a brown Ford LTD at the dumping site and the bodies of Gwendolyn Martin and Janice Griffith.

The police went to Martin's house and received permission to search his apartment. This search proved fruitless. After learning from Martin that he was currently driving a car which he had borrowed from his brother and which was parked outside, the police requested and received permission to search this car. They found jewelry, car keys, and tennis shoes inside a shopping bag in the trunk.

Theria Jones, appellant's brother, testified that Martin came to his house at 12:30 a.m. on August 2nd and asked to borrow his car. When questioned whether he recognized the items found in the trunk of his car, Jones responded that he did not put them in the trunk of his car and had never seen them before.

Maurice Griffith, husband of one of the murder victims, identified State's exhibits 21 (a heart ring), 24 (a chain), 26 (a gold watch), and 28 (a diamond ring) as jewelry which belonged to his wife. The chain, gold watch, and diamond ring were removed from the shopping bag which was found in the trunk of the brother's car. One item of jewelry had blood on it; it was consistent with the blood type of one of the victims. The car keys belonged to the Ford LTD which had been rented by one of the victims. The tennis shoes which were found in the trunk and footprint impressions which were made on a post of wood that was wedged underneath the Ford LTD. were sent to the FBI for comparison. The impressions on the wood corresponded in size, design, and general wear characteristics to the tennis shoes. In addition, Offi-

cer Jerald Rutkowski recovered a beer can from the Ford LTD when he was at the crime scene. The FBI identified four of Martin's latent fingerprints on this beer can.

### I. Sufficiency of the Evidence: Murder Convictions

Appellant claims that the evidence is not sufficient to sustain his convictions because he and an alibi witness testified that he was at a different place when the crime was committed.

This Court does not reweigh the evidence or judge the credibility of witnesses when the sufficiency of the evidence is challenged. Rather, we consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support each element of the offense, then the finding of the trier of fact will not be disturbed. *Napier v. State* (1983), Ind., 445 N.E.2d 1361. The jury's verdict represents the result of their evaluation and determination of the weight to be accorded to the testimony and other evidence presented at trial and their assessment of the credibility of the witnesses. The jury was entitled to find that the evidence recited above proved Martin's guilt beyond a reasonable doubt despite Martin's presentation of alibi evidence.

### II. Waiver of the Right to Counsel

Appellant argues that the trial court erred by allowing the State to introduce evidence which he alleges the police obtained in violation of his Sixth Amendment right. He maintains that he had a right to consult counsel before consenting to a search of his brother's car and that his waiver of this right of consultation was invalid. Specifically, Martin contends that "both searches required a clear explanation of his constitutional rights and not a piggyback method as applied by Officer McCallister." Appellant acknowledges that he executed consent forms which included a recitation of his right to counsel, but he maintains that the second form was thrust

upon him with no opportunity to think about his decision or the consequences of a search of the car. He therefore contends that the products of this illegal search (the jewelry, Ford LTD keys, and tennis shoes) were improperly admitted into evidence at his trial.

When Officers John McCallister and Jon Botich arrived at Martin's apartment, three South Bend police officers were already present. The police explained to appellant that they were investigating a crime and asked for his permission to search his apartment. Botich advised Martin of his *Miranda* rights and appellant responded that he understood these rights. Botich then *read* him the following form:

### PERMIT TO SEARCH
Date ˙

I, _____, having been informed of my Constitutional rights as to self incrimination (MIRANDA WARNINGS), and further having been advised of my right to refuse to consent to a search of my (premises) (motor vehicle) and further that I have an absolute right to confer and speak with my attorney before I grant permission for such a search, hereby authorize, consent and allow, _____ Police Officers of the City of South Bend to conduct a complete search of my (residence) (motor vehicle) which is (located at) (described as) _____ _____.

The above mentioned officers and any others needed to assist them are hereby authorized by me to take from (my residence) (my motor vehicle) any merchandise, personal property or chattels that may be involved in the investigation they are conducting.

This written permission is given by me voluntarily without any consultation with my attorney, threats, force, duress or coercion being exerted on me in order to make me consent against my will.

Signed _____

WITNESSES:

_____

_____

Martin claimed that he did not have anything to hide and then signed this form. The search of his apartment did not produce any evidence.

Officers Cully Walton and Edgar Scott conversed further with appellant and learned that he had been using his brother's car, which was parked in the lot. Martin did not identify which of the four cars parked in the lot belonged to his brother, but Scott was able to identify it by comparing the license plate number on each vehicle with the registration information available through headquarters. One officer asked for and received the car keys before appellant consented to the search of the car.

Before searching this car, McCallister reminded Martin that he had previously been given his *Miranda* rights and read a form consenting to a search of the apartment, that he still had a right to refuse a search of the car even though he had already consented to a search of his apartment, and that he had a right not to have the vehicle searched. Appellant orally gave McCallister permission to search his brother's car and then he signed the form.

McCallister did not ask appellant to read the form or give him an opportunity to think about this search of the vehicle before requesting his signature. Martin stated again that he had nothing to hide and signed the form. Since Martin had become restless while the police were searching his apartment the police had handcuffed him, so they removed these handcuffs so that he could sign the form. Appellant accompanied the police to the station for an interview and within an hour he was placed under arrest.

A subject who is in custody and asks for the opportunity to consult with his attorney pursuant to *Miranda* may not subsequently be requested to consent to a search before having the opportunity for consultation. *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634. A majority of this Court has also held that a subject in custody who waives his right to consult counsel before

talking further with the police has a right to be informed a second time of his right to consult counsel prior to being asked to consent to a search. *Sims v. State* (1980), 274 Ind. 495, 413 N.E.2d 556. (Pivarnik, J., and Givan, C.J., dissenting). The right to consult counsel before consenting to a search may be waived after full advice of all the appellant's constitutional rights. *Larkin v. State* (1979), 271 Ind. 469, 393 N.E.2d 180.

■ In this case, the police did advise Martin of his *Miranda* rights and read to him a consent form which included the *Sims* right before Martin signed the form which evidenced his consent to a search of his apartment. While the police did not read him the consent form a second time before requesting permission to search the car, they did remind Martin that he was not required to consent a second time and handed him the very same consent form he had heard read less than twenty-five minutes before. While Martin would have us hold his waiver unintelligent because he was not read the form a second time or asked to read it himself and reflect on the decision to sign, we find that the proximity of time involved in the two acts indicates that he was adequately informed of his right to consult counsel before giving consent a second time. The trial court properly denied Martin's motion to suppress the fruits of the search of his brother's car.

■ Martin also argues that he did not voluntarily give the police consent to search his brother's car. He maintains that his consent was involuntary because he was handcuffed and under the direct control of five police officers when the police asked for his consent.

Whether a consent to a search was given voluntarily is a question of fact to be determined from the totality of all of the circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. A consent to a search is valid except when it is procured by fraud, duress, fear, or intimidation, or when it is merely a submission to the supremacy of the law. *Darnell v. State* (1982), Ind., 435

N.E.2d 250. Knowledge of the right to refuse a search is one factor which indicates voluntariness. *Schneckloth, supra.* Martin has not shown how his consent was anything but the product of his exercise of a free and unfettered will. *Larkin, supra.* There is no evidence of coercion or of mere submission to the supremacy of the law: Martin's own reply that he did not have anything to hide dispels that contention. *Muegel v. State* (1971), 257 Ind. 146, 272 N.E.2d 617.

■ Appellant also argues that the trial court erred by admitting the consent form for the automobile search because it was altered by the police after he signed it. He maintains that this error was prejudicial because it operated to bolster the testimony that he consented to the search of his brother's car.

This form was identical to the form which he signed when he consented to a search of his apartment. However, the description and license plate number of the vehicle to be searched and the address were not listed on the consent form when Martin signed it. Rather, Officer McCallister filled in the blanks after Martin signed the form and after the search of the car was completed.

McCallister's testimony thoroughly explained to the court and the jury what information was filled in on the form when Martin signed it and what information was filled in later. The information which McCallister added after appellant signed the consent form was initialed by him at the court's request before the exhibit was admitted into evidence. This process occurred in the presence of the jury.

The police told Martin what they wanted to search and advised him that he had a right not to consent before he gave his consent orally. This oral consent was sufficient, and thus the form was only corroborative of his consent. Admitting this form was permissible since it was merely additional evidence of his intent to waive his rights. Moreover, the jury was informed of the information which was added

after Martin signed the form and thus could assess the weight which should attach to the document.

### III. Foundation

■ Appellant argues that a proper foundation did not precede the State's introduction of two handbags which were found near the crime scene and identified as belonging to the victims. He maintains that the State failed to establish an appropriate nexus between him and the purses. He asserts that the evidence was therefore irrelevant.

George Townsend testified that he found two purses in the vicinity of the dumping site on August 9th. Mr. Griffith identified Exhibit 29 as his wife's Gucci purse and Gwendolyn Martin's mother identified Exhibit 48 as the purse her daughter had with her when she left home on August 2nd.

A piece of physical evidence may be admitted after a witness testifies that the item resembles the one associated with the crime and that the item is connected to the defendant and the commission of the crime. *Hooper v. State* (1983), Ind., 443 N.E.2d 822.

The State does not have to establish that the evidence was positively in the possession of the accused in order for the item to be admissible. Rather, any evidence having even a slight tendency to prove a material fact is sufficiently relevant to be admitted. The physical evidence need only constitute a small but legitimate link in the chain of evidence connecting defendant with the crime. *Candler v. State* (1977), 266 Ind. 440, 363 N.E.2d 1233. There was no specific foundation laid to link appellant with the purses. However, the purses were properly admitted as evidence to faithfully reconstruct the crime scene. *Malott v. State* (1985), Ind., 485 N.E.2d 879. The inconclusive connection with appellant affects the weight, not the admissibility. *Carman v. State* (1979), 272 Ind. 76, 396 N.E.2d 344.

### IV. Sufficiency of the Evidence: Habitual Offender Determination

■ Martin argues that the evidence used to establish his status as an habitual offender is insufficient. He maintains that the State did not establish that he was the same Lester Martin who is named on the docket sheets and fingerprint cards which were introduced by the State.

At the habitual offender hearing the State introduced inked fingerprint impressions for a Lester Martin who had been arrested for "A & B with intent to kill" in 1969 and second degree burglary in 1971. The State also introduced docket sheets for these offenses which indicated that a Lester Martin pleaded guilty to the lesser included offenses of Aggravated Assault and Battery and Entering to Commit a Felony, respectively. A sentence of one to five years was imposed for each conviction.

The dates and charges on the arrest cards correspond to the dates and charges on the docket sheets. In addition, Officer Bukowski, who specializes in fingerprint identification and who was the keeper of the records, testified that the fingerprint impression on the arrest cards matched the fingerprint impressions on Martin's fingerprint card for the present charges.

There must be supporting evidence to identify appellant as being the same person named in the documents. *Coker v. State* (1983), Ind., 455 N.E.2d 319. Testimony by a fingerprint expert that a comparison of the fingerprint impressions for the present charges and the prior felonies indicate that they were made from the same person is sufficient. *Rhyne v. State* (1983), Ind., 446 N.E.2d 970. Moreover, appellant admitted at trial that he had prior convictions for Entering to Commit a felony at age 30 and Aggravated Assault in 1969. These are the same lesser included offenses to which he pleaded guilty and were the prior unrelated felonies reflected in the State's documentation. The State asked the court to recognize Martin's testimony regarding these admissions and it did so. The documentation and fingerprint testimony suffi-

ciently identified appellant as the same Lester Martin who was named in the documents.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.