**Donnell THURMAN, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–9204–CR–117.

Court of Appeals of Indiana,
Fifth District.

Nov. 10, 1992.

Transfer Denied Dec. 29, 1992.

Aaron E. Haith, Choate Visher & Haith, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BARTEAU, Judge.

Donnell Thurman appeals his convictions of: Count I, Dealing in Cocaine, a class A felony [1]; Count II, Possession of Cocaine, a class C felony [2]; Count III, Possession of a Handgun With An Obliterated Serial Number, a class C felony [3]; Count IV, Possession of Marijuana, a class A misdemeanor [4]; and Count V, Carrying a Handgun Without A License, a class D felony [5]. He raises two issues for our consideration:

1. Was it error to deny the motion to suppress evidence?
2. Was the evidence sufficient to support the cocaine convictions?

### FACTS

Neighbors had lodged numerous complaints with the Indianapolis Police Department (IPD) concerning illegal activity occurring in the parking lot of the 500 Liquor Store (500) located at 38th and Capitol Avenue in Indianapolis. On July 3, 1990 IPD Detective Charles Martin received an anonymous tip that a white over blue two-door 1977 or 1978 Cadillac would be at the 500 parking lot at approximately 7:00 p.m. that evening and that the occupants would possibly be selling narcotics from the vehicle.

In response to the telephone call from the anonymous tipster, Martin set up surveillance of the 500 parking lot. A white over blue Cadillac, driven by Thurman, pulled into the lot at approximately 7:01 p.m. One of Thurman's two passengers left the Cadillac and walked to a brown Oldsmobile which was also parked in the lot. He had a brief conversation with the two occupants of the Oldsmobile and returned to the Cadillac. All three occupants of the Cadillac subsequently walked over to the Oldsmobile and got inside. None of the individuals from either car ever entered the liquor store.

Martin observed movement inside the Oldsmobile and, based upon his experience, concluded that a narcotics transaction was taking place. He called for uniformed officers to effectuate a stop and upon their arrival he proceeded to the 500 parking lot. Thurman and the others were ordered out of the Oldsmobile and patted down. When Thurman was unable to produce a driver's license, Martin asked if the paper work for the Cadillac was in the Cadillac's glove compartment. Upon being informed that it was, Martin asked for, and received, permission to get the paper work. As he approached the Cadillac, Martin observed, through the open passenger side window, two bags of marijuana [6] in the ashtray. At that point, Thurman and his two passengers were placed under arrest for possession of marijuana. Martin then conducted an inventory search of Thurman's car, recovering two Motorola pagers that were active and going off, ten small bags of cocaine [7] and a loaded .38 caliber revolver with the serial number scratched off.

### SUPPRESSION OF THE EVIDENCE

A. Initial Stop.

Thurman challenges whether IPD officers had sufficient justification for the

---

1. Ind.Code 35–48–4–1.

2. I.C. 35–48–4–6.

3. I.C. 35–47–2–18.
 I.C. 35–47–2–23(b).

4. I.C. 35–48–4–11.

5. I.C. 35–47–2–1.
 I.C. 35–47–2–23(c).

6. Combined weight 1.10 grams.

7. Combined weight 13.7744 grams.

initial stop. "To justify a warrantless intrusion, the police officer need not have probable cause to make an arrest, but must 'point to specific and articulable facts which, taken together with rational inferences from those facts,' reasonably warrant intrusion upon an individual's right of privacy." *Gipson v. State* (1984), Ind., 459 N.E.2d 366, 368 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.E.2d 889, 906 (1968)). Here the officers observed Thurman pull into the 500 liquor store lot and park; one of Thurman's passengers walk over to the Oldsmobile, speak with the occupants, and return to Thurman's Cadillac; Thurman and his passengers exit the Cadillac and enter the Oldsmobile; movement in the Oldsmobile; and, failure of any of the individuals under observation to enter the liquor store. These observations are insufficient to create a "reasonable suspicion," *Terry, supra,* that the individuals were involved in criminal activity and therefore a warrantless "stop and frisk," based solely on these observations, would not withstand scrutiny.

■ However, in addition to the above observations, IPD Detective Martin received an anonymous telephone tip that a white over blue Cadillac would arrive in the 500 lot at approximately 7:00 p.m. and that narcotics might be sold from the vehicle. As a result of the tip, Martin set up surveillance and as predicted the white over blue Cadillac pulled into the 500 Liquor Store lot at 7:01 p.m. An anonymous tip, combined with independent observations and confirmation of the information relayed by the anonymous caller, may provide sufficient indicia of reliability to justify an investigatory stop. *Alabama v. White,* 496 U.S. 325, 331–32, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990).

In *White,* police received an anonymous phone call indicating that "Vanessa White would be leaving 235–C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attache case." *Id.* 496 U.S. at 327, 110 S.Ct. at 2414. Police located a brown Plymouth with a broken taillight in the apartment complex and as they watched a woman left the 235 building, entered the station wagon, and drove the most direct route to Dobey's Motel. Police stopped White before she reached the motel and discovered marijuana and cocaine in her possession. *White* acknowledged that an anonymous tip alone would rarely provide the reasonable suspicion necessary for a *Terry* stop, but held that an anonymous tip predicting specific *future* behavior, corroborated by the occurrence of that behavior, was sufficiently reliable to justify a stop. The Court cited *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) for the proposition that "because an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." *White,* 496 U.S. at 331, 110 S.Ct. at 2417. The prospective nature of the anonymous tip added to its credibility. "Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *White,* 496 U.S. at 332, 110 S.Ct. at 2417 (citation omitted).

As in *White,* Martin's anonymous caller provided specific details of Thurman's *future* behavior. The tip that a Cadillac of a particular color would pull into the 500 parking lot at approximately 7:00 p.m. and be used for the purpose of dispensing illegal drugs was corroborated when a Cadillac matching that described by the tipster pulled into the lot at the designated time and its occupants failed to enter the liquor store to make a purchase. This failure, combined with the accuracy of the predictions, created a reasonable suspicion and justified the investigatory stop.

**B. Access to Glove Compartment**

 In a related argument, Thurman contends that even if the initial stop was justified, the intrusion into his car was not because his consent to search was not voluntarily given. He maintains that his consent was involuntary because at the time he consented he was under arrest and in police custody[8] and because the police claimed the authority to obtain identification and search the Cadillac for the title documents. He maintains that he merely acquiesced to their apparent authority and that such acquiescence did not amount to a knowing and voluntary waiver of his Fourth Amendment rights.

 "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); *see also Snyder v. State* (1989), Ind.App., 538 N.E.2d 961. The voluntariness of a consent to search is a question of fact to be determined from a totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct.2041, 36 L.Ed.2d ·854 (1973); *Martin v. State* (1986), Ind., 490 N.E.2d 309. A consent to a search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law. *Phillips v. State* (1986), Ind., 492 N.E.2d 10 (overruled on other grounds). "Though consent may constitute a waiver of Fourth Amendment rights, to be valid a waiver must be an intelligent relinquishment of a known right or privilege. Such a waiver cannot be conclusively presumed from a verbal expression of assent. The Court must determine from all the circumstances whether the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld." *United States v. Payne*, 429 F.2d 169 (9th Cir.1970) (citation omitted) (quoted with approval in *Sayne v. State* (1972), 258 Ind. 97, 279 N.E.2d 196). "Knowledge of the right to refuse a search is one factor which indicates voluntariness." *Martin*, 490 N.E.2d at 313.

 In the case before us, five or six police officers swooped in on Thurman and his companions, blocking their exit and ordering them out of the Oldsmobile. Thurman and the others were then forced to keep their hands on the Oldsmobile while each one was patted down. Detective Martin testified that: "I asked if he [Thurman] had an Indiana driver's license and he stated no. I asked if he had paper work to the vehicle and he stated yes. That the paper work to the vehicle was in the glove compartment of the Cadillac that he was operating. I asked Donnell Thurman for his permission to get the paper work out of the glove compartment. He consented yes." All of this occurred while Thurman was surrounded by five other officers and still being forced to keep his hands on the Oldsmobile. He was not advised of his *Miranda* rights nor informed in any way that he could refuse Martin's request. Given this intimidating atmosphere, Thurman's consent was merely submission to the supremacy of the law rather than a voluntary relinquishment of a known right. Thus, his "consent" cannot be used to justify a search of his car. *See Sayne*, 279 N.E.2d 196 (police stopped the defendant's car solely for the reason that the car's right headlight was not functioning. Police testified that as they stopped the car they saw the defendant raise his hand up to the sunvisor area and then drop it down again. When asked to pull down the sunvisor, the defendant complied. Lowering the sunvi-

---

**8.** While we disagree that Thurman was in police custody or under arrest at the time he consented to the search of his car, he was clearly "seized" for Fourth Amendment purposes. The prevailing view in Indiana is that a person has been "seized" only if a reasonable person in a similar situation would have believed that he was not free to leave. *Molino v. State* (1989), Ind., 546 N.E.2d 1216. *Knowles v. State* (1991), Ind.App., 571 N.E.2d 1308. Thurman and the others were compelled by the officers to keep their hands on the Oldsmobile and were not permitted to look around. Given these circumstances, a reasonable person would not consider himself free to walk away.

sor resulted in the discovery of a bag of marijuana. This search could not be legitimized by a finding of consent to search. At most the facts indicated that the "so-called consent" constituted "nothing more than *passive submission* to the search" and therefore fell far short of a "voluntary and intelligent waiver" or "relinquishment of a known right or privilege.")

## C. Open View.

■ Even though Thurman's consent to the search of his car did not qualify as an exception to the warrant requirement, the evidence seized therein was nevertheless admissible. The trial court ruled that because the marijuana was discovered in "plain view," it need not be suppressed. "Upon review of a trial court determination of the validity of a search the appellate tribunal considers the evidence favorable to the trial court's ruling and any uncontradicted contrary evidence, and uphold the trial court's ruling if it is supported by the evidence." *Bruce v. State* (1978), 268 Ind. 180, 375 N.E.2d 1042, 1071 (abrogated on different issue). It does not matter if the trial court's stated reason for its decision is incorrect, so long as the decision itself is correct. *Hyde v. State* (1983), Ind., 451 N.E.2d 648.

■ The trial court was incorrect that the marijuana was discovered in "plain view". The "plain view" exception to the warrant requirement, as established by *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and recently modified by *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), has three requirements: (1) the police officer must lawfully be in a place or position from which he can view the property seized; (2) the item seized must in fact be in plain view at the time it is discovered; and (3) it must be readily apparent to the police officer that the item is an instrumentality of or fruit of a crime.[9] The distinction between the plain view exception to the warrant requirement, and the discovery of items in "open view" is discussed in

*Sayre v. State* (1984), Ind.App., 471 N.E.2d 708:

*Coolidge* and its progeny cover the situation where a government agent, *after* an intrusion into a constitutionally protected area, sees contraband in plain view and seizes it without a search warrant covering the contraband seized. The *Coolidge* requirements are applied to determine whether the items so seized were obtained within a valid exception to the fourth amendment's prohibition of unreasonable searches and seizures. 1 W. LaFave, *Search and Seizure*, Section 2.2 at 242 (1978) (LaFave). *See State v. Kaaheena* (1978), 59 Haw. 23, 28, 575 P.2d 462, 466. However, a close situation often confused with the plain view doctrine occurs when a police officer sees contraband from an area that is not constitutionally protected, i.e., *before* an intrusion, e.g. where a police officer sees something in an open field, *Hester v. United States* (1924), 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898, *Cornman v. State* (1973), 156 Ind.App. 112, 294 N.E.2d 812; on the body of a person, *United States v. Rizzo* (7th Cir.1978), 583 F.2d 907; within a building, *United States v. Morrow* (7th Cir.1976), 541 F.2d 1229, *Bruce v. State* (1978), 268 Ind. 180, 375 N.E.2d 1042; or within a motor vehicle, *Cobb v. State* (1980), Ind., 412 N.E.2d 728. In these situations, sometimes referred to as "open view," *Kaaheena, supra*, no "search" in the constitutional sense has occurred. 1 *LaFave* at 243. Because there is no search, *Coolidge* need not be followed.

The threshold question for us is whether the police officer intruded upon a constitutionally protected area, i.e. an area where the defendant had an expectation of privacy protected under the fourth amendment. As the United States Supreme Court stated in *Katz v. United States* (1967), 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576:

"[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even

---

**9.** *Horton* overruled the requirement of inadvertent discovery under *Coolidge.*

in his own home or office, is not a subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

*Sayre*, 471 N.E.2d at 712.

Detective Martin testified at the suppression hearing that he saw the marijuana in the ashtray through the open passenger side window of the Cadillac. He testified that he always looks inside a car before entering it to make sure there is nobody inside and it was during this visual scan that he observed the marijuana in the ashtray. Because the Cadillac was in a public parking lot and the marijuana was readily visible to anyone who might pass by the passenger side of the Cadillac, the marijuana was in "open view". Thus, there was no "search" or initial intrusion into a constitutionally protected area and therefore nothing to trigger the protections offered by the Fourth Amendment.[10] Consequently, the marijuana was lawfully discovered and therefore admissible.[11] Because Thurman was arrested upon discovery of the marijuana, the inventory search of the Cadillac, which produced the cocaine and handgun, was permissible. *Griffin v. State* (1978), 175 Ind.App. 469, 472–474, 372 N.E.2d 497, 500–501.

### SUFFICIENCY OF THE EVIDENCE

Thurman contends that the State failed to prove that he had actual or constructive possession of the cocaine and thus presented insufficient evidence to support the dealing and possession convictions. He claims that he did not have exclusive possession of the trunk where the cocaine was discovered and the evidence was uncontro-

verted that one of his passengers placed the cocaine in the trunk of the Cadillac without his knowledge. To the contrary, the State presented evidence that Thurman had the only key to the trunk and that he made a statement to Detective Martin that the other passengers had nothing to do with the cocaine or gun. Essentially, Thurman is asking us to reweigh the evidence and find in his favor, an exercise which this appellate court may not perform. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670. Because the evidence was conflicting, we affirm the decision of the trier of fact. *Daniels v. State* (1982), Ind., 436 N.E.2d 788.

### LESSER INCLUDED OFFENSE

We *sua sponte* address the fact that Thurman was convicted of and sentenced for both dealing in cocaine and possession of cocaine. Possession of cocaine is an inherently included lesser offense of dealing in cocaine and imposing sentence for both offenses violates Thurman's right against double jeopardy. *Frierson v. State* (1991), Ind.App., 572 N.E.2d 536. Accordingly, the sentence for possession of cocaine must be vacated.

Remanded with instructions to vacate the four year sentence under Count II. The judgment is affirmed in all other respects.

SHIELDS, J., concurs.

RUCKER, J., concurs in result.

---

**10.** *See* Kerr, *Indiana Criminal Procedure: Pretrial*, 16 Indiana Practice Series § 2.2e, for an indepth discussion of the plain view/open view distinction.

**11.** Once an item is discovered in open view, a search warrant or an exception thereto is re-

quired prior to the item being seized. In the case before us, the marijuana was properly seized without a warrant pursuant to the "automobile exception". *Henry v. State* (1978), 269 Ind. 1, 9, 379 N.E.2d 132, 137.