STATE of Indiana, Appellant–Plaintiff,

v.

William E. SCHEIBELHUT, Appellee–Defendant.

No. 34A02–9604–CR–244.

Court of Appeals of Indiana.

Dec. 9, 1996.

---

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for Appellant.

## OPINION

FRIEDLANDER, Judge.

The State appeals an order of the Howard Superior Court granting a motion to suppress filed by William E. Scheibelhut in a criminal action pending against Scheibelhut. Upon appeal, the State presents the following restated issue for review:

> Is a consent to search involuntary and thus invalid on the sole basis that a person was not informed of his right to refuse consent?

We reverse and remand with instructions.

At approximately midnight on December 6, 1995, Kokomo police officer David Galloway observed a vehicle driven by Scheibelhut driving in excess of the speed limit with a broken taillight. Officer Galloway initiated a traffic stop. After checking on Scheibelhut's driver's license and registration in his squad car, Officer Galloway returned the items to Scheibelhut, who was still seated in his vehicle, and the traffic stop was "basically ... finished" at that point. *Record* at 51. According to Galloway, Scheibelhut was "extremely cooperative" throughout the entire traffic stop. *Id.* at 54

Officer Galloway decided to ask for Scheibelhut's permission to search his person and his vehicle. The officer explained his decision as follows:

> [A]fter I gave him his license back I decided to ask him for permission to search his vehicle. His person and his vehicle and the contents for illegal drugs or weapons. Uh at the time we were having a severe problem with criminal mischiefs [sic] in the area involving pellet guns. Uh I took that opportunity to ask him for his permission to search his vehicle.

*Id.* Scheibelhut agreed and stepped out of the vehicle. While Officer Galloway searched Scheibelhut's person, he asked Scheibelhut whether he had a pellet gun in his vehicle, and Scheibelhut responded that there was a pellet gun under the front seat. A subsequent search of Scheibelhut's vehicle revealed both the gun and marijuana. Scheibelhut was arrested and charged with possession of marijuana.

Scheibelhut filed a motion to suppress on grounds that he had not given valid consent to search the vehicle because Officer Galloway did not inform Scheibelhut that he had the right to refuse permission. It is apparent by the comments which accompanied the

trial court's ruling that the motion was granted solely upon the basis that Scheibelhut did not receive such an advisement:

> I will show that due to the a [sic] lack of warning to the Defendant that he had a right to refuse the option and that the Motion to Suppress is granted and a written Order will follow.

*Record* at 62–63.

Our standard of review in such cases was set forth in *Thurman v. State*, 602 N.E.2d 548, 552 (Ind.Ct.App.1992), *trans. denied:*

> "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797; *see also Snyder v. State* (1989), Ind.App., 538 N.E.2d 961 [*trans. denied* ]. The voluntariness of a consent to search is a question of fact to be determined from the totality of the circumstances. [Citations omitted.] A consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law. [Citation omitted.] "Though consent may constitute a waiver of Fourth Amendment rights, to be valid a waiver must be an intelligent relinquishment of a known right or privilege. Such a waiver cannot be conclusively presumed from a verbal expression of assent. The Court must determine from all the circumstances whether the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld." *United States v. Payne,* 429 F.2d 169 (9th Cir. 1970) (citation omitted) (quoted with approval in *Sayne v. State* (1972), 258 Ind. 97, 279 N.E.2d 196). "Knowledge of the right to refuse a search is one factor which indicates voluntariness." [*Martin v. State,* 490 N.E.2d 309, 313 (Ind.1986).]

■ It appears the trial court determined that the lack of an advisement that a request to search can be refused renders consent involuntary. Such is not the case. As stated in *Thurman,* knowledge of the right to re-fuse is *but one factor* in determining the voluntariness of consent to search.

Although in *Thurman* we determined that consent was involuntary in a case where the advisement in question was not given, that conclusion was based primarily upon another factor. We noted that at the time Thurman consented to the search of his vehicle, he "was surrounded by five other officers and still being forced to keep his hands on" his car. *Thurman,* 610 N.E.2d at 552. We concluded, "[g]iven this intimidating atmosphere, Thurman's consent was merely submission to the supremacy of the law rather than a voluntary relinquishment of a known right." *Id.* Thus, the determination in *Thurman* was based upon the conclusion that the challenged consent was the product of one of the five circumstances identified in *Darnell v. State,* 435 N.E.2d 250 (Ind.1982) as invalidating apparent consent.

In the instant case, the trial court's comments reflect that it did not consider the totality of the circumstances, but instead focused solely upon the lack of a Fourth Amendment advisement. The court erred in so doing. As indicated in *Thurman,* the court should consider the *totality* of the circumstances in determining whether consent given in a particular case was valid.

This principle was recently reaffirmed by the United States Supreme Court in *Ohio v. Robinette,* —— U.S. ——, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). In *Robinette,* a motorist was stopped for speeding. After a check of Robinette's license and registration revealed no previous violations, the deputy returned his license and asked him to step out of his vehicle. Robinette was then asked if he had contraband, weapons, or drugs in the car. Robinette responded that he did not. The deputy then asked if he could search Robinette's vehicle. Robinette consented and a subsequent search revealed the presence of marijuana. The Ohio Supreme Court determined that Robinette's consent was not voluntary because he was not told he was free to go after his license was returned.

The Supreme Court reversed and in so doing rejected the notion that the Fourth Amendment's proscription of unreasonable

searches is reducible to bright-line rules. The Supreme Court's discussion of the principle in *Robinette* is equally applicable in the instant case:

> We have long held that the "touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances.
>
> In applying this test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry. Thus, in *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), we expressly disavowed any "litmus test" or single "sentence or ... paragraph ... rule," in recognition of the "endless variations in the facts and circumstances" implicating the Fourth Amendment. *Id.,* at 506, 103 S.Ct. at 1329....
>
> We have previously rejected a *per se* rule very similar to that adopted by the Supreme Court of Ohio in determining the validity of a consent to search. In *Schneckloth v. Bustamonte,* 412, U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), it was argued that such a consent could not be valid unless the defendant knew that he had a right to refuse the request. We rejected this argument: "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." *Id.,* at 227, 93 S.Ct. at 2048. And just as it "would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning," *id.,* at 231, 93 S.Ct. at 2050, so too would it be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary.

> The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and "[v]oluntariness is a question of fact to be determined from all the circumstances," *id.,* at 248–49, 93 S.Ct. at 2059. The Supreme Court of Ohio having held otherwise, its judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*Robinette,* —— U.S. ——, at —— – ——, 117 S.Ct. 417, at 420–22, —— L.Ed.2d ——, at —— – ——.[1]

■ In this context, the "totality of the circumstances" includes, but is not limited to, the following considerations: 1) Whether the defendant was advised of his *Miranda* rights prior to the request to search; 2) the defendant's degree of education and intelligence; 3) whether the defendant was advised of his right not to consent;[2] 4) whether Officer Galloway made any express or implied claims of authority to search the vehicle without consent; 5) whether Officer Galloway was engaged in any illegal action prior to the request; 6) whether the defendant previously was cooperative; and 7) whether Officer Galloway was deceptive as to his true identity or the purpose of his search. *See State v. Flowers,* 57 Wash.App. 636, 789 P.2d 333 (1990), *review denied,* 115 Wash.2d 1009, 797 P.2d 511. Only after considering multiple factors such as those listed above can the court determine whether Scheibelhut's consent to search was voluntary and thus valid.

As *Robinette* and *Thurman* indicate, the determination of whether consent in this context was voluntary is a question of fact, and a reviewing court is ill-equipped to make factual determinations. This is especially true where, as here, the evidence of record is

---

**1.** *Robinette* is, of course, controlling authority on the question of whether Scheibelhut's motion has merit under the United States Constitution. As indicated in *Robinette,* however, the Indiana Constitution may afford broader protection than does the federal Constitution in this regard. Therefore, as to the merits of Scheibelhut's motion under the Indiana Constitution, the *Robinette* holding is not necessarily dispositive. However, we find no cases supporting the proposition that our supreme court would hold that the Indiana Constitution goes beyond the federal Constitution to impose a bright-line requirement that voluntary consent requires an advisement of the right to refuse a request to search.

**2.** We note here that a defendant's previous encounters with law enforcement, if any, is relevant on the question of whether that defendant knew of the right to refuse consent.

conflicting and arguably may support either outcome. We therefore reverse the decision of the trial court and remand with instruction to reevaluate Scheibelhut's motion to suppress consistent with the principles set out in this opinion.

Judgment reversed and remanded with instructions.

SULLIVAN and DARDEN, JJ., concur.