Macio D. LYONS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9911–CR–779.

Court of Appeals of Indiana.

July 25, 2000

Publication Ordered Sept. 18, 2000.

Jan B. Berg, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Janet Parsanko, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Defendant Macio D. Lyons (Lyons) appeals his convictions of dealing in cocaine, a Class A felony, Ind.Code § 35–48–4–1, and resisting law enforce-

ment, a Class A misdemeanor, Ind.Code § 35-44-3-3.

We affirm.

## ISSUES

Lyons raises four issues for our review, which we consolidate and restate as follows:

1. Whether the trial court improperly admitted the cocaine into evidence because the officers lacked a reasonable suspicion to stop Lyons.

2. Whether Lyons' consent to search his person and his luggage was valid and voluntary.

3. Whether Lyons' sentence was manifestly unreasonable.

## FACTS AND PROCEDURAL HISTORY

On September 28, 1998, Officer Janet Cotton of the Indianapolis Police Department was on duty at the Indianapolis Airport. Officer Cotton received a telephone call from Agent Bruce Gellar of the Minneapolis Task Force notifying Officer Cotton that Lyons was on a flight from San Francisco to Indianapolis via Minneapolis and that he appeared to be a possible drug courier. After Lyons' plane landed in Indianapolis, Officer Cotton approached Lyons and identified herself as a drug task force agent and asked Lyons if she could search his person and his luggage. Officer Cotton later testified that Lyons gave consent to the search. Sergeant Gerald Ross also of the Indianapolis Police Department approached Lyons and asked him if he would like to be searched out of public view, and Lyons stated that he wished for Sergeant Ross to perform the search where they stood in public view at the airport. Lyons then changed his mind and Sergeant Ross and Lyons proceeded to the restroom to perform the search. Inside the restroom, Sergeant Ross performed a search of Lyons' person and discovered a controlled substance on Lyons' person later ·identified as cocaine in the amount of 474.51 grams. When Sergeant Ross discovered the cocaine, Lyons attempted to flee the restroom, injuring two police officers.

On September 29, 1998, Lyons was charged with Count I, dealing in cocaine, a Class A felony, Count II, possession of cocaine, a Class C felony, and Count III, resisting law enforcement, a Class A misdemeanor.

Before his trial, Lyons filed a motion to suppress the evidence of the cocaine because the police did not have probable cause for the search, he did not consent to the search, and the search was not valid. On January 29, 1999, the trial court conducted a suppression hearing, and on March 22, 1999, the trial court denied Lyons' motion to suppress.

On June 1, 1999, the trial court conducted a bench trial and found Lyons guilty on all three counts. On August 3, 1999, the trial court conducted a sentencing hearing. The trial court found four aggravating factors and two mitigating factors and sentenced Lyons to the presumptive sentence of thirty years for Count I, dealing in cocaine, enhanced by ten years for a sentence of forty years for Count I. Further, the trial court sentenced Lyons to one year for Count III, resisting law enforcement, and ordered the sentences to be served concurrently. The trial court stated that there was not a judgment or a sentence on Count II, possession of cocaine, and the Abstract of Judgment does not reflect any conviction with respect to Count II. Therefore, Lyons received a total sentence of forty years. Additional facts will be supplied when necessary.

## DISCUSSION AND DECISION

### I. Reasonable Suspicion to Stop

Lyons argues that the trial court erred by denying his motion to suppress the admission of the cocaine into evidence. Specifically, Lyons contends that the airport police lacked a reasonable suspicion to conduct an investigatory stop, and there-

fore the cocaine discovered as a result of the stop should have been excluded.

■■■■ The trial court has broad discretion in ruling on the admissibility of evidence. *Drake v. State,* 655 N.E.2d 574, 575 (Ind.Ct.App.1995). We will reverse a trial court's ruling on the admissibility of evidence only when it has been shown that the trial court abused its discretion. *Carter v. State,* 692 N.E.2d 464, 465 (Ind.Ct. App.1997). A trial court's decision to deny a motion to suppress is reviewed as a matter of sufficiency. *Wilson v. State,* 670 N.E.2d 27, 29 (Ind.Ct.App.1996). Thus, in reviewing a trial court's decision on a motion to suppress, we do not reweigh the evidence or judge the credibility of witnesses, but determine if there was substantial evidence of probative value to support the trial court's ruling. *Whitfield v. State,* 699 N.E.2d 666, 668 (Ind.Ct.App. 1998), *trans. denied.* However, when evaluating determinations of reasonable suspicion, we accept the factual findings of the trial court unless they are clearly erroneous. *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *L.A.F. v. State,* 698 N.E.2d 355, 356 (Ind.Ct.App.1998). We review de novo the ultimate determination of reasonable suspicion. *Ornelas,* 116 S.Ct. at 1663; *L.A.F.,* 698 N.E.2d at 356.

Lyons argues that the officers' investigatory stop at the airport was not based upon sufficient information in order to create a reasonable suspicion that he was carrying drugs. Before considering the issue of Lyons' consent to search his person and his luggage, we first must consider the propriety of his being stopped at the airport.

■■■■ At the time Lyons left the airplane and entered the Indianapolis airport, the officers did not have probable cause to arrest him. However, in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court of the United States held that law enforcement officers have a right to make a brief investigatory stop of a person provided they have a reasonable and articulable suspicion that the person has been, is, or is about to be engaged in breaking the law. Specifically, in *Terry,* the Supreme Court established the rule that a police officer can, without a warrant or probable cause, briefly detain a person for investigatory purposes if, based on specific and articulable facts together with rational inferences from those facts, "official intrusion upon the constitutionally protected interests" of private citizens is reasonably warranted, *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1879–80, and the officer has a reasonable suspicion that criminal activity "may be afoot." *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884. Indiana courts follow the *Terry* guidelines. *Taylor v. State,* 639 N.E.2d 1052, 1054 (Ind.Ct.App. 1994); *Platt v. State,* 589 N.E.2d 222, 225–26 (Ind.1992); *Garrett v. State,* 466 N.E.2d 8, 10 (Ind.1984). Whether a particular fact situation justifies an investigatory stop is determined on a case by case basis. *Platt,* 589 N.E.2d at 226. The requirements of the Fourth Amendment are satisfied if the facts known to the officer at the moment of the stop are such that a person "of reasonable caution" would believe that the "action taken was appropriate." *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880. Indiana has adopted this test. *Gipson v. State,* 459 N.E.2d 366, 368 (Ind.1984).

In addition, our supreme in *Garrett,* citing *Terry,* stated:

It has been established that police have a right to make an investigatory stop of a vehicle or of an individual on foot if, at the time of such stop, a man of reasonable caution would believe that further investigation was appropriate. It is not necessary that police have probable cause for an arrest when making such an investigatory stop. The reasonableness of the warrantless intrusion depends upon specifically articulable facts and reasonable inferences from those facts which warrant the suspicion of unlawful conduct.

*Garrett,* 466 N.E.2d at 10.

■■■■ Therefore, the reasonable suspicion requirement is satisfied where the

facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Carter*, 692 N.E.2d at 466. Reasonable suspicion entails something more than an inchoate and unparticularized suspicion or hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence. *Luster v. State*, 578 N.E.2d 740, 743 (Ind.Ct.App.1991). Consideration of the totality of the circumstances necessarily includes a determination of whether the defendant's own actions were suspicious. *Carter*, 692 N.E.2d at 467.

■ Here, based upon information provided by a Minneapolis airport police officer, Officer Cotton of the Indianapolis Police Department had specific or articulable facts justifying a reasonable suspicion that Lyons had been engaging in or was about to engage in criminal activity. Specifically, Officer Cotton testified that she received information from the Minneapolis Airport Task Force about Lyons that matched the characteristics that the Indianapolis Airport Task Force uses to determine whether an individual is a possible drug courier. Shortly before Lyons' arrival at the Indianapolis airport, Officer Bruce Gellar (Gellar), a Minneapolis airport police officer, notified Officer Cotton that there was an individual that he considered to be a possible drug courier. Officer Gellar identified the possible drug courier as Lyons, and gave Officer Cotton Lyons' airline, seat number, flight number, and approximate arrival time in Indianapolis. In addition, Officer Gellar notified Officer Cotton that Lyons had a criminal history involving firearms and controlled substances, Lyons purchased his airline ticket at the airport just prior to boarding his flight in San Francisco, and Lyons had checked no luggage. Therefore, Officer Cotton testified that based upon her thirty-one (31) years of experience with the Indianapolis Police Department, and ten (10) years experience assigned to the In-

vestigating Management Division, Covert Investigation Branch, Narcotics Section, Airport Detail, she reasonably determined that the information she had received warranted an investigatory stop of Lyons upon his arrival at the Indianapolis airport. Under such circumstances, the police officers had a reasonable and articulable suspicion that Lyons was carrying illegal drugs, and therefore the police officers had a right to make an investigatory stop of Lyons to detain him briefly to complete their investigation. However, we must now determine whether Lyons' consent to search his person and his luggage was valid and voluntary.

## II. *Consent to Search*

Next, Lyons argues that the officers' search of his person and his luggage was neither valid nor voluntary. First, Lyons contends that when the officers' asked if he minded if they searched his person and his luggage, he answered affirmatively, demonstrating that the officers did not have consent to the search. Further, Lyons claims that he did not give the officers consent to search his person and his luggage voluntarily because a reasonable person in his situation would not have felt free to refuse consent and walk away.

■ We initially note our standard of review when reviewing a trial court's ruling on the validity of a search and seizure: we consider the evidence most favorable to the ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. *Melton v. State*, 705 N.E.2d 564, 566 (Ind.Ct.App.1999). If the evidence is conflicting, we consider only the evidence favorable to the ruling and will affirm if the ruling is supported by substantial evidence of probative value. *Id.*

■ Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. In cases involving a warrantless search, the State bears the burden of proving an exception to the war-

rant requirement. *State v. Farber*, 677 N.E.2d 1111, 1116 (Ind.Ct.App.1997), *trans. denied*. A valid consent to search is an exception to the warrant requirement. *Id*. The theory underlying this exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable. *See Jones v. State*, 655 N.E.2d 49, 54 (Ind.1995), *reh'g. denied*.

When the State seeks to rely upon consent to justify a warrantless search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. *Thurman v. State*, 602 N.E.2d 548, 552 (Ind.Ct.App.1992), *trans. denied*. The voluntariness of this consent to search is a question of fact to be determined from the totality of the circumstances. *Id*. A consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law. *Id*. To constitute a valid waiver of Fourth Amendment rights, a consent must be the intelligent relinquishment of a known right or privilege. *Id*. (quoting *United States v. Payne*, 429 F.2d 169 (9th Cir.1970)). Such a waiver cannot be conclusively presumed from a verbal expression of assent unless the court determines, from the totality of the circumstances, that the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld. *Id*. Knowledge of the right to refuse a search is one factor which indicates voluntariness. *Id*.

The "totality of the circumstances" from which the voluntariness of a detainee's consent is to be determined includes, but is not limited to, the following considerations: (1) whether the defendant was advised of his Miranda rights prior to the request to search; (2) the defendant's degree of education and intelligence; (3) whether the defendant was advised of his right not to consent; (4) whether the detainee has had previous encounters with law enforcement; (5) whether the officer made any express or implied claims of authority to search without consent; (6) whether the officer was engaged in any illegal action prior to the request; (7) whether the defendant was cooperative previously; and (8) whether the officer was deceptive as to his true identity or the purpose of the search. *State v. Scheibelhut*, 673 N.E.2d 821, 824 (Ind.Ct.App. 1996).

Lyons argues that Officer Cotton's testimony evinces that he did not give the officers consent to search his person and his luggage. Specifically, Officer Cotton testified that she asked Lyons, "did he mind if my partners searched he and his luggage," (Supp. R. 40)[1] to which Lyons replied "Yeah" while "shaking his head up and down." (Supp. R. 47). Therefore, Lyons contends that his response to Officer Cotton's request to search his person and his luggage was an affirmative denial of the officers' consent to a search, and demonstrates that he did mind if the officers searched his person and his luggage.

The evidence most favorable to the trial court's ruling indicates that the police officers did not place Lyons under arrest or restrain his liberty in any way until after they discovered the cocaine on Lyons' person. Accordingly, Lyons was not advised of his Miranda rights prior to the search. Further, Sergeant Gerald Ross testified that he observed Lyons agree to a consensual search and he heard Officer Cotton notify Lyons that he was a law enforcement officer and then Officer Cotton advised Sergeant Ross that Lyons had agreed to a search of his person. After

1. The Record of Lyons' case contains two separate records. The Record of Proceedings contains the court trial and will be referred to by this court as ("R."), while the Supplemental Record of Proceedings contains the suppression hearing, and will be referred to by this court as ("Supp. R.").

Officer Cotton identified Sergeant Ross to Lyons, Sergeant Ross asked Lyons if he would like to be searched where they stood at the airport or would he wish to go to a more private place like the restroom to perform the search, and Lyons replied that he "would like to do it here." (R. 60). However, Lyons changed his mind and Sergeant Ross and Lyons proceeded to the restroom. In addition, Sergeant Ross testified at the suppression hearing that he told Lyons that he did not have to allow him to perform the search, however, Lyons did not indicate that he did not wish to continue the search. Sergeant Ross further testified that he would not have continued searching Lyons if Lyons had retracted his consent. While searching Lyons' person in the restroom, Sergeant Ross identified what he believed to be a controlled substance stashed around Lyons' waist. At this point, Sergeant Ross asked Lyons what this package was, and Lyons attempted to run for the restroom exit. Therefore, we find sufficient evidence based upon the totality of the circumstances test to indicate that Lyons' search was valid and voluntarily given.

### III. *Proper Sentence*

Lyons argues that the trial court erred by enhancing his sentence. Specifically, Lyons contends that the trial court abused its discretion because the record does not support one of the aggravating factors found by the trial court.

▮▮▮▮▮ "The determination of a defendant's sentence is within the trial court's discretion, and will be reversed only upon a showing of abuse of discretion." *Ballard v. State*, 715 N.E.2d 1276, 1279 (Ind.Ct. App.1999). A trial court's wide discretion extends to the determination of whether to increase presumptive penalties, impose consecutive sentences on multiple convictions, or both. *Singer v. State*, 674 N.E.2d 11, 13 (Ind.Ct.App.1996). One aggravating factor alone is sufficient to impose consecutive sentences and to enhance the presumptive sentence. *Buzzard v. State*, 712 N.E.2d 547, 554 (Ind.Ct.App.1999), *trans.*

*denied.* "The trial judge determines the weight to be given any aggravating or mitigating factors during sentencing." *Id.* A trial court is not required to find mitigating factors. *Hunter v. State*, 676 N.E.2d 14, 17 (Ind.1996).

▮▮▮▮ Here, the trial court found the following aggravating factors: (1) a history of criminal or delinquent activity, (2) commission of the offense while on probation, (3) prior offenses involving weapons, and that (4) two police officers were injured during Lyons' attempt to flee the scene. The trial court also found the following mitigating factors: (1) Lyons' troubled upbringing with a mother who was a crack addict, and (2) Lyons' achievement of obtaining employment following his release from federal prison, and retaining this employment for eighteen months before committing the present crime.

However, Lyons argues that the evidence does not support the aggravating factor that two police officers were injured because he was the only person injured during the arrest. Nevertheless, the trial court also found Lyons' criminal history to be an aggravating circumstance. As we previously stated, a single aggravating factor alone is sufficient to enhance a presumptive sentence. *See Buzzard*, 712 N.E.2d at 554, *trans. denied.* Therefore, because the trial court's sentence reveals at least one aggravating factor, and the trial court identified and balanced the aggravating and mitigating factors, we find that the trial court properly sentenced Lyons.

### CONCLUSION

Based on the foregoing, the trial court properly admitted the cocaine into evidence because the officers did have a reasonable suspicion to stop Lyons at the airport. Lyons' consent to search his person and his luggage was valid and voluntary, and the trial court properly sentenced Lyons.

Affirmed.

BAKER, J., and KIRSCH, J., concur.

*ORDER*

This Court having heretofore handed down its opinion in this cause marked Memorandum Decision, Not for Publication; and

Comes now the Appellant, by counsel, and files herein Motion to Publish Opinion, alleging therein that the Memorandum Decision of this Court involves a legal and factual issue of unique interest and substantial public importance, namely, the issue of an airport stop based on a drug courier profile and the subsequent search of such person; and that publication of the Memorandum Decision would be of benefit to Indiana attorneys and judges, which said Motion is in the following words and figures, to-wit:

(H.I.)

And the Court, having examined said Motion and being duly advised, now finds that the same should be granted and that this Court's decision in this appeal, previously marked Memorandum Decision, Not for Publication, should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. The Appellant's Motion to Publish Opinion is granted and this Court's opinion heretofore handed down in this cause on July 25, 2000, marked Memorandum Decision, Not for Publication, is now ordered published.