**Adolfo NAVARRO, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 64A03–0601–CR–35.**

Court of Appeals of Indiana.

Oct. 23, 2006.

Mitchell A. Peters, Hilary R. Hall, Richard A. Miller & Associates, Merrillville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a bench trial, Appellant, Adolfo Navarro, appeals his conviction and sentence for Dealing in Cocaine as a Class A felony.[1] Upon appeal, Navarro claims his conviction was based upon evidence which was seized in violation of his Fourth Amendment rights.

We affirm.

The record[2] reveals that on March 8, 2002, sometime during the midnight shift, Officer Matthew Edwards of the Porter County Sheriff's Department observed a Cadillac driving westbound on U.S. Highway 20 when, upon observing the Cadillac in front of him, he noticed it pass over the fog line to the right and then return to its lane. Officer Edwards ran the Cadillac's license plate and determined the vehicle was registered to a certain Adolfo Navarro. According to Officer Edwards, he then contacted Officer Laflower, who had previously served in the drug unit, to "confirm [his] suspicion" that he had heard the name Adolfo Navarro "several times as a possible cocaine dealer." Supp. Tr. at 10. Officer Edwards testified that Officer Laflower indicated he was familiar with Navarro's name. Officer Edwards then initiated a traffic stop due to Navarro's unsafe lane movement. Upon approaching the driver, Officer Edwards obtained his license and registration and observed that the driver's identification indicated he was Adolfo Navarro. Officer Edwards returned to his patrol car and confirmed that Navarro had a valid license. Officer Edwards then returned to the Cadillac and detected a weak odor of alcohol, but the odor was weak enough and Navarro appeared rational and showed no other signs of being intoxicated, so Officer Edwards did not sense Navarro was an impaired driver. Officer Edwards then informed Navarro that he was going to issue him a

---

1. Ind.Code § 35–48–4–1 (Burns Code Ed. Repl.2004).

2. At the August 2, 2005 trial, the court took judicial notice of the evidence admitted during the March 7, 2003 suppression hearing.

written warning for unsafe lane movement and asked him if he would object to a search of the Cadillac. Officer Edwards testified that upon asking Navarro if he could search his car, he indicated to Navarro he was looking for knives, guns, or bazookas. At the suppression hearing, Officer Edwards conceded he was not looking for weapons but was actually looking for cocaine, and that he did not inform Navarro that he had the right to decline consent. According to Officer Edwards, Navarro consented to a search.

Officer Edwards testified he returned to his patrol car to summon Officer Chayhitz and his canine partner and then returned to the Cadillac to inform Navarro that there would be approximately a fifteen-minute wait. Officer Edwards testified that Navarro voiced no objection and even indicated that Navarro had opened the trunk for purposes of the search.

As Officer Edwards waited, several other officers arrived on the scene. Not all of them stayed, but two who did served as a back-up unit. When Officer Chayhitz arrived on the scene approximately thirteen minutes later, he asked Navarro if he was the owner of the Cadillac, and Navarro responded that he was. Officer Chayhitz also asked for Navarro's consent to search the Cadillac, and Navarro again consented. Officer Chayhitz further noticed that the Cadillac's trunk was open. According to Officer Chayhitz, Navarro was "very cooperative" and showed "[n]o hesitation" in consenting to the Edwards asked Navarro to step out of the Cadillac and then handed back to Navarro his license and registration as well as a written warning. Upon conducting a search, Officer Chayhitz and his canine partner uncovered a clear plas-

tic baggie containing a white powder located near the driver's side door. Officer Edwards testified that he asked Navarro whether the substance contained in the baggie was cocaine, and Navarro confirmed that it was.

Officer Edwards informed Navarro he was under arrest, placed him in handcuffs, and escorted him back to his patrol car to perform a pat-down search. According to Officer Edwards, prior to the pat-down search, Navarro indicated he had "two more" in his pocket. Trial Tr. at 27. During the pat down, Officer Edwards discovered five additional packets containing a substance. According to Officer Edwards, Navarro volunteered that the drugs had been purchased for party favors.

Results from a laboratory test indicated all six baggies contained cocaine which totaled 6.4 grams in weight. An inventory search of the Cadillac revealed $552 in Navarro's wallet, which was left on the seat, with another $20 found on the floorboard.

Navarro was charged on March 11, 2002 with dealing in cocaine as a Class A felony. Following the trial court's January 6, 2004 denial of his motion to suppress,[3] Navarro was tried on August 2, 2005 in a bench trial in which he renewed his motion to suppress.[4] On September 19, 2005, the trial court again denied his motion to suppress and entered a judgment of conviction. The court sentenced Navarro on December 12, 2005 to twenty years with the Department of Correction, with eighteen years suspended and the remaining two years to be served on home detention. Navarro filed his notice of appeal on January 9, 2006.

3. The trial court did not provide reasons for its denial of Navarro's motion to suppress.

4. The renewal of the motion to suppress during trial may be considered as the equivalent of an objection to the admissibility of the evidence seized.

Upon appeal, Navarro claims his conviction was based upon evidence which was seized in violation of his Fourth Amendment rights against unreasonable searches and seizures.[5] Specifically, Navarro contests the voluntariness of his consent to search his car.

In reviewing challenges to a trial court's ruling on the validity of a search and seizure, we consider the evidence most favorable to the ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. *Callahan v. State,* 719 N.E.2d 430, 434 (Ind.Ct.App.1999). If the evidence is conflicting, we consider only that evidence which is favorable to the ruling and will affirm if the ruling is supported by substantial evidence of probative value. *Id.*

Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Id.* In cases involving warrantless searches, the State bears the burden of proving an exception to the warrant requirement. *Id.* The theory underlying this exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable. *Id.*

When the State relies upon a defendant's consent to justify a warrantless search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. *Id.* at 435. The voluntariness of a consent to search is a question of fact to be determined from the totality of the circumstances. *Id.* A consent to search is valid except where it is procured by fraud, duress, fear, intimi-

dation, or where it is merely a submission to the supremacy of the law. *Id.* To constitute a valid waiver of Fourth Amendment rights, a consent must be the intelligent relinquishment of a known right or privilege. *Id.* (quotation omitted). Such waiver may not be conclusively presumed from a verbal expression of assent unless the court determines, from the totality of the circumstances, that the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld. *Id.* Knowledge of the right to refuse a search is one factor which indicates voluntariness. *Id.*

The "totality of the circumstances" from which the voluntariness of a defendant's consent is to be determined includes, but is not limited to, the following considerations: (1) whether the defendant was advised of his Miranda rights prior to the request to search; (2) the defendant's degree of education and intelligence; (3) whether the defendant was advised of his right not to consent; (4) whether the detainee has previous encounters with law enforcement; (5) whether the officer made any express or implied claims of authority to search without consent; (6) whether the officer was engaged in any illegal action prior to the request; (7) whether the defendant was cooperative previously; and (8) whether the officer was deceptive as to his true identity or the purpose of the search. *Id.* (citing *State v. Scheibelhut,* 673 N.E.2d 821, 824 (Ind.Ct.App.1996)).

Navarro argues that the totality of the circumstances demonstrates that his consent to search was not voluntary. In making this argument, Navarro points out

---

**5.** Navarro makes no reference to Article 1, Section 11 of the Indiana Constitution apart from making passing references to "Indiana law," which he does not distinguish from his

Fourth Amendment claims. We therefore address his claims based upon a Fourth Amendment analysis and do not separately analyze his claims under Article 1, Section 11.

that (1) he had no criminal record and thus no previous contact with law enforcement; (2) the investigative stop was based upon mere rumors that he may have been a cocaine dealer, some of which could not have been used to justify his arrest because they were voiced only after his arrest; (3) he was never advised of his Miranda rights prior to the search, nor was he advised of his right to refuse the search; (4) he was not free to leave the scene because Officer Edwards remained in possession of his driver's license, registration, and traffic warning and failed to offer them back to Navarro or inform him he was free to request them;[6] (5) Officer Edwards was deceptive in his request to search because he implied he was looking for weapons rather than drugs by asking if Navarro had any guns, knives, or bazookas;[7] (6) there were multiple police officers on the scene, as well as a canine unit, which contributed to an intimidating environment.

The State responds that the totality of the circumstances shows Navarro gave a voluntary consent to search. As the State points out, Navarro gave consent to search the Cadillac on two separate occasions without hesitation, both to Officer Edwards after he indicated he was issuing Navarro a warning, and also to Officer Chayhitz after he had arrived with the canine unit. In consenting to Officer Edwards, Navarro not only agreed to a search and subsequently to the short wait for the canine unit to arrive, he also—of his own initiative—popped open the trunk in what the State contends was an apparent demonstration of full compliance. The State further argues that in requesting Navarro's consent, neither officer touched or physically restrained Navarro in any manner. The State claims that the environment was not coercive or intimidating because although there were additional officers at the scene, as well as, at the latter stages of the stop, a police dog, the dog remained inside the patrol car until Navarro gave consent to Officer Chayhitz, and the two additional officers at the scene merely remained behind Officer Edwards's car as a back-up, but never approached Navarro. The State further argues that although Officer Edwards maintained control over Navarro's license, registration, and traffic warning, this was never expressly used against Navarro as leverage for making him consent. The State also contests Navarro's claim that the officers used deception, claiming instead that Navarro was fully informed of Officer Edwards's intent to conduct a search with a canine unit.

In assessing the totality of the circumstances in the case at hand, we are guided

**6.** Navarro's argument regarding the fact that Officer Edwards retained his license and registration is only that his consent was involuntary; he makes no claim that he was entitled to specific advisements pursuant to *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975).

**7.** Officer Edwards first stated he had asked Navarro, upon requesting consent to search, if he had "any guns, knives, bazookas, or anything in the car." Supp. Tr. at 13. Upon being asked to repeat what he had asked, Officer Edwards stated he had asked Navarro if he had any "knives, guns, bazookas, *anything like that*." Supp. Tr. at 13 (emphasis supplied). Later, upon cross-examination, defense counsel asked Officer Edwards if he had asked Navarro about "guns, *drugs*, knives, bazookas," when requesting consent to search. Supp. Tr. at 43 (emphasis supplied). Navarro indicated he had asked something "to that effect." Supp. Tr. at 43. Defense counsel appeared to concede that Officer Edwards indicated to Navarro he was looking for drugs as well as weapons, in spite of the fact that Officer Edwards did not indicate he had inquired about drugs upon first reciting the events in question. In any event, it appears all parties agree that Officer Edwards indicated to Navarro that the purpose of his search was to look for contraband.

by the manner in which we have assessed such circumstances in the past. In *Callahan,* 719 N.E.2d at 435–36, we found a defendant's consent voluntary where the defendant had not been arrested or had his liberty physically restrained; appeared to be of normal intelligence and not under the effect of drugs or alcohol; had been issued a warning ticket and told he was free to go but was subsequently advised to get out of his car and asked if he would consent to a search; had been informed by the inquiring officer that such officer was a drug interdiction officer looking for narcotics; and was told he was not required to cooperate at any stage of the search process. In determining the consent was voluntary, we concluded that the defendant was free to drive away without repercussion at any point before contraband was discovered pursuant to the consent search. *Id.* at 436.

Similarly, in *Smith v. State,* 713 N.E.2d 338, 340–43 (Ind.Ct.App.1999), *trans. denied,* we found a defendant's consent to search his vehicle voluntary following a traffic stop where both the defendant, who was a passenger, and the driver, were asked to step out of the vehicle, were separated and questioned, and at least four officers were present on the scene. In determining that the defendant's consent to search was voluntary, we stated that "[a]lthough the number of officers was unusually high for a traffic stop, none of the officers touched [the defendant] or physically restrained his freedom of movement before the moment he consented to the search of his car." *Id.* at 343.

In *Lyons v. State,* 735 N.E.2d 1179, 1185–86 (Ind.Ct.App.2000), *trans. denied,* we held that a consent to search a defendant's person and luggage at an airport was voluntary under the totality-of-the-circumstances test where the defendant's liberty was not restrained, the drug task force agent requesting consent identified herself as such, the defendant agreed to a search of his person, he indicated his wish to be searched in public but then changed his mind and was taken to a restroom for the search, and he was informed that he did not have to permit the search.

In *Ammons v. State,* 770 N.E.2d 927, 929–34 (Ind.Ct.App.2002), *trans. denied,* we again determined that a defendant's consent was voluntary. The defendant in *Ammons* had been stopped for failing to signal a turn and was not in possession of a license or registration. He was asked if he possessed weapons or drugs. He answered that he did not, but nevertheless consented to a search of his car. During a pat-down search of his person prior to the search of the car, an officer found cocaine. While we acknowledged our ongoing concern about searches and seizures following lawful traffic stops which were pretextual in nature, we nevertheless determined that a search justified by a defendant's voluntary consent was permissible, and under the totality of the circumstances, the *Ammons* defendant's consent was voluntary: he was not under arrest or entitled to Miranda rights at the time of consent; there was no illegal action or deception on the part of the officer; and the evidence did not show he was compelled to submit to a search because the only show of force involved flashing lights, two officers, a request for license and registration, and a request that the defendant exit his vehicle and provide identifying information. *Id.* at 934. In arriving at that determination, we contrasted the facts in *Ammons* demonstrating voluntary consent with the facts in *Thurman v. State,* 602 N.E.2d 548, 552 (Ind.Ct.App.1992), *trans. denied,* where a defendant's "consent" was determined to be mere submission to the authority of the law rather than voluntary consent. In *Thurman,* the defendant "consented" to an officer retrieving paperwork from the

glove compartment of his car after "five or six police officers swooped in on [him] and his companions, blocking the exit and ordering them out of [their] [car]" and then forced them to keep their hands upon the car. 602 N.E.2d at 552.

Considering the evidence most favorable to the trial court's ruling, in light of the above cases, we note in our review of the "voluntariness" factors that in the instant case Navarro was neither placed under arrest or physically restrained at the time Officer Edwards initially requested Navarro's consent, nor was he under arrest or physically restrained upon indicating his continuing assent to the search while awaiting the arrival of Officer Chayhitz or at the time of his consent to Officer Chayhitz. Moreover, there is no evidence that the additional officers who arrived on the scene were ever in contact with Navarro or demonstrated any kind of coercive force. Accordingly, he was not advised of his Miranda rights prior to the requests to search, nor was such advisement required. *See Lockett v. State,* 747 N.E.2d 539, 543 (Ind.2001) ("Ordinarily, persons detained for traffic stops are not 'in custody' for purposes of Miranda."); *see also, Smith,* 713 N.E.2d at 343 (finding consent voluntary where none of the officers at the scene touched or physically restrained the defendant); and *Jones v. State,* 655 N.E.2d 49, 56 (Ind.1995) (finding defendant who

was seized for purposes of a traffic stop was neither arrested nor in custody during initial traffic stop when none of the officers present touched or physically restrained him prior to his consent to search and did not ask incriminating questions or interrogate him).

■■■ We recognize that Officer Edwards maintained possession of Navarro's license and registration while requesting Navarro's consent, but the fact that Officer Edwards had possession of these documents indicates only that the nature of Navarro's and Officer Edwards's encounter was an investigative one. *See Finger v. State,* 799 N.E.2d 528, 533 (Ind.2003). As Officer Edwards had initially stopped Navarro for a traffic violation, it is clear that their encounter was investigative. But the fact that the purpose for the traffic stop was investigative to begin with does not render Navarro's subsequent consent during the course of that stop necessarily involuntary.[8] The undisputed evidence was that Navarro consented after Officer Edwards's initial request to search, and there was no evidence that Navarro ever voiced any objection to his continuing assent or indicated a desire to leave. Officer Edwards testified at the suppression hearing that had Navarro voiced such an objection, Officer Edwards would have given him his warning and let him leave.[9]

---

**8.** In *Camp v. State,* 751 N.E.2d 299, 305–06 (Ind.Ct.App.2001), *trans. denied,* in an analysis of the voluntariness of a defendant's consent where we determined the consent was voluntary, we distinguished *United States v. Lee,* 73 F.3d 1034, 1040 (10th Cir.1996), *overruled in part by United States v. Holt,* 264 F.3d 1215, 1226 n. 6 (10th Cir.2001), due to the fact that the police officer in Lee retained the defendant's documents. We believe the real point of distinction between Lee and *Camp* was that the court in Lee was assessing whether the continued seizure of the defendant was justifiable as a consensual encounter after the officer retained his documents, not

whether the defendant's consent to a search of his car was voluntary, as our court was determining in *Camp.* Indeed the determination of whether a defendant is involved in a consensual encounter (or, by contrast, received his Miranda advisements) is only one of eight factors used for purposes of determining the voluntariness of consent. *Camp,* 751 N.E.2d at 304–05.

**9.** There is conflicting testimony by Officer Edwards regarding whether Navarro was free to leave as they waited for Officer Chayhitz. Officer Edwards stated, "At any time [Navarro] could have objected to the search and he

*See Jones*, 655 N.E.2d at 56 ("Had Jones refused to give the police permission to search, he would have been given two citations and been free to leave.") Indeed, Navarro's willingness to consent to the search is evidenced by his acting upon his own initiative to open the Cadillac's trunk for Officer Edwards.

Additionally, there is nothing to indicate that Navarro, who appeared to be fully cooperative, was below average in terms of education and intelligence, and there is no suggestion that Officer Edwards, either expressly or impliedly, claimed he had authority to search Navarro without his consent or engaged in any illegal action prior to requesting consent. Indeed the evidence supports a finding that Navarro and Officer Edwards engaged in a cooperative encounter, where Officer Edwards requested Navarro's cooperation, Navarro complied, and Officer Edwards kept Navarro informed as to the events which followed and the time they would take.

We recognize that there were no facts showing that Navarro had a history of encounters with law enforcement, or that he was informed of his right to choose not to consent. We have specifically declined, however, to adopt a bright-line rule requiring that a defendant be informed of his right to refuse consent in order to find a consent voluntary. *Scheibelhut*, 673 N.E.2d at 823. Indeed, we have held that "knowledge of the right to refuse is *but one factor* in determining the voluntariness of consent to search." *Id.* (emphasis in original).

Further, while Officer Edwards may not have indicated to Navarro that he suspected his involvement with drugs, and there are varying accounts as to whether he stated he was looking for drugs as well as weapons, Officer Edwards's purpose, as he expressed it to Navarro upon requesting consent, was to look for contraband in the car. We do not find Officer Edwards deceitful for failing to specify, if indeed he did, which category of contraband he was looking for. *Cf. Melton v. State*, 705 N.E.2d 564, 568 (Ind.Ct.App.1999), (questioning the officers' use of feigned concern for the defendant's welfare as subterfuge to gain access to her home and search it for drugs) (Robb, J., concurring).

Upon considering the totality of the circumstances, we conclude that the evidence supports the determination that Navarro's consent to the search was voluntary. It is undisputed that Officer Edwards retained Navarro's documents and did not inform him of his right to refuse consent. While a different trial court, given this evidence, may have ruled otherwise, the bulk of the evidence tends to support this trial court's conclusion that Navarro's consent was voluntary under the current definition of voluntariness as illustrated by *Callahan, Smith, Lyons, Ammons*, and *Thurman*. The evidence shows that Navarro, who remained in his car, agreed to the initial request to search, acted independently to facilitate that search by popping his trunk, and made no subsequent indication of his wish to withdraw his consent. While sitting in his car, unrestrained in any physical capacity by the officers, he was approached by a total of two officers during a span of at least thirteen minutes, and the

would have been free to leave." Supp. Tr. at 40. Officer Edwards later indicated, however, with respect to the period of time when he and Navarro waited for Officer Chayhitz to arrive, that Navarro was not free to leave. Whether or not Officer Edwards considered Navarro free to leave after Navarro's initial

consent, it does not appear that Navarro changed his mind after his initial consent. In any event, of course, the standard for assessing a defendant's consent under the Fourth Amendment is an objective analysis. *Buckley v. State*, 797 N.E.2d 845, 848 (Ind.Ct.App. 2003).

officers kept him informed of his circumstances, including the fact that they were looking for contraband. Such evidence supports a finding of voluntary consent.

Having determined that Navarro's consent was a voluntary relinquishment of a known right rather than a submission to the supremacy of the law, we affirm the trial court's judgment of conviction against Navarro for dealing in cocaine.

The judgment of the trial court is affirmed.

BAKER, J., and MAY, J., concur.