**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 05 2012, 8:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Clark County Chief Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRENDA S. HANNA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1105-CR-277 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK SUPERIOR COURT
The Honorable Jerome F. Jacobi, Judge
Cause No. 10D02-1002-FD-70

**MARCH 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Brenda Hanna appeals her conviction for Class D felony possession of a narcotic drug. Ind. Code § 35-48-4-6(a) (2006). We affirm.

## ISSUE

Hanna presents one issue, which we restate as: whether the trial court abused its discretion in the course of admitting evidence at trial.

## FACTS AND PROCEDURAL HISTORY

One evening in February 2010, Officer John Hartman of the Jeffersonville Police Department saw a vehicle turning from Plank Road onto Main Street. The driver, later identified as Hanna, failed to signal the turn. Officer Hartman initiated a traffic stop. Upon approaching the vehicle, Officer Hartman saw Hanna, who was almost fifty years old, and a male passenger who appeared to be roughly twenty years younger. Officer Hartman asked Hanna for her driver's license, registration, and proof of insurance. Hanna gave Officer Hartman her driver's license but had only an expired registration and no proof of insurance. Officer Hartman returned to his vehicle and ran the information on Hanna and her passenger. He received an alert over the radio from Officer Denver Leverett, a narcotics enforcement officer, that Hanna had been known to use heroin. While Officer Hartman continued to check Hanna's information, Officer Leverett and Sergeant Greg Sumler arrived to assist him. Hanna's information came back showing that she was a valid licensed driver.

Officer Hartman returned to Hanna, and when she was still unable to produce any valid proof of insurance, he asked her to exit the vehicle. They went to the rear of her

2

vehicle to talk. Officer Hartman explained that if she could not provide proof of insurance, he would have to issue a citation and tow the vehicle. Tr. p. 76. Officer Hartman asked about the age difference between Hanna and her passenger. Hanna responded that they were in a relationship and that they were not doing anything illegal. Officer Hartman then asked for consent to search the vehicle, and Hanna consented. At some point before he searched the vehicle, Officer Hartman told Hanna that he would be looking for heroin. *Id.* at 89-90.

Hanna's purse was sitting open on the driver's seat. Inside the purse, Officer Hartman found a small change purse containing two plastic baggies with a white powdery residue. When Officer Hartman told Hanna what he had found, Hanna said that she had previously had a heroin problem and that she had forgotten that the heroin was still in her purse. Officer Hartman then performed a field test on the substance, which came back positive for heroin. Hanna was placed under arrest.

The State charged Hanna with Class D felony possession of a narcotic drug. Hanna filed a motion to suppress evidence of the heroin found in her purse, which was denied after a hearing. At a jury trial, Hanna objected to evidence of the heroin, but the trial court overruled her objections. The jury found Hanna guilty as charged, and the trial court sentenced her to three years in the Department of Correction. Hanna now appeals.

<u>DISCUSSION AND DECISION</u>

Although Hanna originally challenged the evidence of the heroin through a motion to suppress, she now challenges this evidence on appeal following a completed trial. The issue is therefore properly framed as whether the trial court abused its discretion by

3

admitting the challenged evidence at trial. *See Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Id.* We do not reweigh the evidence, and we consider any conflicting evidence in favor of the trial court's ruling. *Id.* However, we must also consider the uncontested evidence favorable to the defendant. *Id.*

Hanna does not challenge the initial stop of her vehicle, nor could she do so. Police officers may stop a vehicle when they observe minor traffic violations. *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006). A traffic violation, however minor, creates probable cause to stop a vehicle. *Id.* Officer Hartman's observation of Hanna turning without signaling justified the initial stop in this case. *See* Ind. Code § 9-21-8-25 (1991) (providing that a driver must signal before turning or changing lanes).

Instead, Hanna contends that the search of her vehicle violated her rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution because her consent to search was not voluntary. Specifically, Hanna claims that her consent was obtained only after Officer Hartman "unreasonably detained her . . . beyond the time necessary to complete his investigation of the infraction for which she was stopped." Appellant's Br. p. 6. A search warrant is generally a prerequisite to a constitutionally proper search and seizure. *Callahan v. State*, 719 N.E.2d 430, 434 (Ind. Ct. App. 1999). In cases involving a warrantless search, the State bears the burden of proving an exception to the warrant requirement. *Id.* A valid consent to search is an exception to the warrant requirement. *Id.* The theory underlying this

4

exception is that, when an individual gives the State permission to search his or her person or property, the governmental intrusion is presumably reasonable. *Id.* We first address whether Hanna was unreasonably detained and then address whether her consent was voluntary.

Hanna argues that she was unreasonably detained when Officer Hartman extended the duration of the stop by waiting for backup officers and asking a question unrelated to the purpose of the stop. During the stop, Officer Hartman asked Hanna about the age difference between her and her passenger. Hanna claims that Officer Hartman lacked reasonable suspicion to ask this question and that it unreasonably extended the duration of the stop. However, the Seventh Circuit has held that because questions are neither searches nor seizures, an officer need not demonstrate justification for each inquiry. *United States v. Childs*, 277 F.3d 947, 949 (7th Cir. 2002). "Questions asked during detention may affect the reasonableness of that detention (which *is* a seizure) to the extent that they prolong custody, but questions that do not increase the length of detention (or that extend it by only a brief time) do not make the custody itself unreasonable . . . ." *Id.* Officer Hartman's brief question unrelated to Hanna's failure to signal and failure to provide proof of insurance did not unreasonably extend the duration of the stop or otherwise violate the Fourth Amendment or Article 1, Section 11 of the Indiana Constitution. *See State v. Washington*, 898 N.E.2d 1200, 1205, 1208 (Ind. 2008) (where officer initiated traffic stop based on observation of defendant repeatedly driving moped left of center and suspicion that defendant was under eighteen and not wearing goggles or helmet as required by statute, officer's question as to whether defendant had any drugs on

5

his person did not violate Fourth Amendment or Article 1, Section 11 of the Indiana Constitution).

We also disagree with Hanna's claim that Officer Hartman extended the duration of the stop by waiting for backup officers. At trial, Officer Hartman testified that he was running Hanna's information while waiting for an additional unit:

> Uh, I went back to my vehicle and began to uh run information, check her [d]river's [l]icense through dispatch, uh go ahead and verify the plates on the vehicle, all that good stuff. Um, and then uh waited for an additional unit to get there. Uh while I was still seated in my vehicle checking her information such as the [d]river's [l]icense and [r]egistration, two [o]fficer[s] from the Jeffersonville Police Department did arrive to assist me . . . .

Tr. pp. 74-75. The fact that Officer Hartman waited for an additional unit to arrive therefore did not extend the duration of the stop. We conclude that Hanna was not unlawfully detained at any point during the stop.

We note that Hanna assumes that Officer Hartman waited for backup officers to arrive, asked a question unrelated to the purpose of the stop, and asked for consent to search only after Officer Hartman was done dealing with her failure to signal and her failure to provide proof of insurance. *See* Appellant's Br. p. 11. Our review of the record, however, reveals that Officer Hartman had not yet completed the purpose of the stop. After Officer Hartman ran Hanna's information, he gave her another chance to provide proof of insurance, informed her that he would have to issue a citation and tow the vehicle, then asked about the age difference between her and her passenger and whether she would consent to search. There is no indication that Officer Hartman issued the citation before he asked for consent to search. In any event, the key inquiry is not

6

whether Officer Hartman asked for consent before or after the purpose of the traffic stop was terminated. *See Callahan*, 719 N.E.2d at 439 (rejecting defendant's argument that Indiana Constitution prohibits officer from seeking consent to search vehicle after purpose of traffic stop is terminated even though officer has no independent reasonable suspicion of illegal activity). Rather, the key inquiry is whether Hanna's consent was voluntary.

A warrantless search based on lawful consent is consistent with both the Indiana and United States Constitutions. *Campos v. State*, 885 N.E.2d 590, 600 (Ind. 2008). The State has the burden of proving that the consent was in fact voluntarily given. *Id.* Voluntariness is a question of fact to be determined from all the circumstances. *Id.* A consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law. *Navarro v. State*, 855 N.E.2d 671, 675 (Ind. Ct. App. 2006). To constitute a valid waiver of Fourth Amendment rights, a consent must be the intelligent relinquishment of a known right or privilege. *Id.* Such waiver may not be conclusively presumed from a verbal expression of assent unless the court determines, from the totality of the circumstances, that the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officer a license that the person knows may be freely and effectively withheld. *Id.*

The totality of the circumstances from which the voluntariness of a defendant's consent is to be determined includes, but is not limited to, the following considerations: (1) whether the defendant was advised of his or her *Miranda* rights before the request to search; (2) the defendant's degree of education and intelligence; (3) whether the

7

defendant was advised of his or her right not to consent; (4) whether the defendant has had previous encounters with law enforcement; (5) whether the officer made any express or implied claims of authority to search without consent; (6) whether the officer was engaged in any illegal action before the request; (7) whether the defendant was cooperative previously; and (8) whether the officer was deceptive as to his or her true identity or the purpose of the search. *Id.*

The evidence most favorable to the trial court's ruling shows that Officer Hartman neither arrested Hanna nor physically restrained her until after he discovered the heroin in her purse. Accordingly, Officer Hartman did not advise Hanna of her *Miranda* rights before the request to search, nor was such an advisement required. *See id.* at 678 (noting that although defendant was not advised of his *Miranda* rights before request to search, defendant was not entitled to such advisement because he was not in custody). The record does not indicate that Hanna, who was cooperative throughout the incident, was below average in terms of education or intelligence. It is unclear if Officer Hartman knew whether Hanna had had previous encounters with law enforcement; however, he was alerted by Officer Leverett that Hanna had been known to use heroin. Hanna's presentence investigation report shows that she has had numerous encounters with law enforcement. There is no suggestion that Officer Hartman engaged in any illegal action before requesting consent or that he claimed any authority to search without consent. Officer Hartman was not deceptive about the purpose of the search and instead told Hanna that he would be searching for heroin. Although we acknowledge that Officer Hartman did not advise Hanna of her right not to consent, "knowledge of the right to

8

refuse is *but one factor* in determining the voluntariness of consent to search." *State v. Scheibelhut*, 673 N.E.2d 821, 823 (Ind. Ct. App. 1996). The totality of the circumstances shows that Hanna's consent to search her vehicle was voluntary.

We conclude that Hanna's rights provided by the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution were not violated. The trial court therefore did not abuse its discretion by admitting evidence of the heroin at trial.

CONCLUSION

For the reasons stated above, we affirm Hanna's conviction.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.