FILED

Apr 19 2023, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

Richard J. Thonert
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General

Catherine E. Brizzi
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kriss Eugene Bauman II, *Appellant-Defendant,* | April 19, 2023 |
| | Court of Appeals Case No. 22A-CR-20 |
| v. | Appeal from the Noble Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Michael J. Kramer, Judge |
| | Trial Court Cause No. 57C01-2104-F3-9 |

**Opinion by Judge Foley**
Judges May and Brown concur.

**Foley, Judge.**

Kriss Bauman ("Bauman") struck a motorcycle with his truck, injuring its rider. Bauman initially informed officers that the motorcycle had overtaken him and cut in front of his truck, but then revealed that he had actually been pursuing the motorcycle, which he claimed had been stolen from his friend. After being placed in a squad car, police informed Bauman that he could consent to a blood draw or else police would seek a warrant. Bauman consented to the blood draw, which revealed the presence of amphetamine and methamphetamine. Bauman challenged the admission of the blood test results at his trial for aggravated battery and operating a vehicle with a controlled substance in his system, contending that his consent was not freely and voluntarily given. More specifically, Bauman argues that his consent was not voluntary because it was a result of: (1) an unconstitutional ultimatum; (2) a violation of his right to counsel; and (3) an illegal detention. Bauman further argues that the blood draw was unreasonable under Article I, Section 11 of the Indiana Constitution.[1] As a secondary matter, Bauman argues that the trial court erroneously admitted lay witness testimony about whether Bauman was pursuing the man on the

---

[1] Bauman also cites to Article 1 Section 13, but does so in the context of an argument pertaining to whether Bauman was entitled to the benefit of counsel under our state Constitution, and, if so, whether the denial of counsel would invalidate the consent given for the blood draw. Pursuant to *Pirtle v. State*, 323 N.E.2d 634, 640 (Ind. 1975), police officers are generally required to inform a subject of his or her right to consult with counsel prior to obtaining consent for a search, though there are numerous exceptions. As Baumann notes, the *Pirtle* decision was rooted in Article 1 Section 13, but over the years the *Pirtle* analysis has shifted, finding a new home in Article 1 Section 11. Regardless, the State correctly recognizes that this court has found that the *Pirtle* holding does not extend to the kind of blood draw chemical test at issue in this case. *See Datzek v. State*, 838 N.E.2d 1149, 1160 (Ind. Ct. App. 2005). We decline Bauman's invitation to depart from the holding of that case.

motorcycle. Finding that Bauman's consent was valid and that any lay witness testimony erroneously admitted was harmless, we affirm the trial court.[2]

## Facts and Procedural History

On March 29, 2021, a witness stepped out of his home and saw a truck following a motorcycle. No witnesses observed the impact when Bauman's truck collided with the motorcyclist, but a motorist travelling in the opposite direction saw Bauman's truck come out of the curve where the collision occurred with significant damage, scattering debris. A witness also observed the motorcycle fly out from under the truck and settle in a ditch. The passing motorist phoned 911 and stopped to pick up the motorcyclist's helmet. Bauman remained at the scene, and two other witnesses rendered aid until the police arrived. The motorcyclist was then transported to the hospital via helicopter.[3]

Meanwhile, Officers Jones and Gillison from the Kendallville Police Department arrived, as did Deputies Gibson and Baker from the Noble County Sheriff's Department. Speaking initially to Officer Jones, Bauman indicated that the motorcyclist had overtaken him and then braked, resulting in the

---

[2] The court thanks the University of Southern Indiana for hosting oral argument in this case, as well as Professor Nicholas LaRowe and his students for their hospitality, and counsel for their able presentations.

[3] Police found significant amounts of methamphetamine and marijuana on the motorcyclist's person at the scene. After two weeks in the hospital and another nineteen days in a rehabilitation facility, however, the motorcyclist absconded. As of the date of the filings in this appeal, he had not been located and remains wanted on criminal charges.

collision. He subsequently told Officer Jones, however, that the motorcycle had been stolen from his friend and that he was attempting to retrieve it. At this point Bauman was standing outside his truck, and Officer Jones was examining the motorcycle. Deputy Chase Gibson—previously elsewhere on the scene—approached. Bauman answered Deputy Gibson's questions[4] and provided his license and registration. Deputy Gibson then requested that Bauman come to his squad car where he ordered Bauman into the back seat and closed the door. As they walked to the squad car, Deputy Gibson asked two questions about whether Bauman knew the motorcyclist. Bauman replied in the affirmative. As a result of Bauman's statement that he followed the motorcyclist in order to retrieve the stolen motorcycle, officers determined that they were engaged in a criminal investigation, and Deputy Gibson opened the back door of the squad car and read Bauman his *Miranda* rights. Deputy Gibson informed Bauman that he was not under arrest, but that he did not want Bauman "going anywhere." Ex. 7, file 2. Bauman replied that he did not intend to.

[4] Shortly thereafter, Deputy Gibson opened the door of the squad car in order to give Bauman a bottle of water. Bauman placed his foot in the doorway and Deputy Gibson repeatedly instructed him to "tuck it back in" the car. *Id*. Bauman assured the deputy that he was not going anywhere but that the back of the car was hot and stuffy. Deputy Gibson then informed another officer that Bauman was "making him nervous," *id*., and placed Bauman in handcuffs,

---

[4] Deputy Gibson was tasked with performing the accident reconstruction.

informing Bauman once again that he was not under arrest. Now handcuffed, Bauman was returned to the car and requested that an officer inform his wife, who was at the scene, to call "Thonert."[5] The record suggests that police did not relay the message.

[5] Deputy Gibson subsequently opened the door of the squad car to read Bauman a card that informed him of Indiana's implied-consent law.[6] Deputy Gibson then asked: "Will you take a chemical test?"[7] Ex. 7, file 4. Bauman responded: "I have to call my lawyer." *Id*. Deputy Gibson then stated: "Okay, well I'm asking are you going to take the chemical test? . . . I just read you what the penalties are if you don't." *Id*. Deputy Gibson further informed Bauman that he did not have a right to an attorney at that point because "that's not how this works" and informed Bauman that, if he did not consent to a blood draw, police would seek a warrant. *Id.* At that point, Bauman consented to the blood draw. During the thirty-seven minutes that officers interacted with Bauman prior to reading him the implied consent card, the officers did not administer or seek to administer field sobriety tests or a portable breath test. Bauman was

---

[5] Thonert is a reference to Richard Thonert, Bauman's attorney.

[6] There are several implied consent statutes, but the relevant one here is Indiana Code Chapter 9-30-7. Section 3 of the chapter requires officers to offer persons the opportunity to consent to a "chemical test" when an accident involves death or serious bodily injury. If the person does not consent, the person's driving privileges are suspended for a year under section 5 of the chapter. Thus, the two sections work together to provide both the requirement and the penalty for refusing to comply with the offer for a chemical test.

[7] Blood draws and the resulting tests are one example of a "chemical test" and the only type of test at issue in this case.

taken to a hospital. His blood draw indicated the presence of amphetamine and methamphetamine.

[6] On April 6, 2021, the State charged Bauman with aggravated battery. The State subsequently amended the charging information to include a second count: operating a vehicle while intoxicated resulting in serious bodily injury, a Level 5 felony. Bauman filed a motion to suppress evidence on November 11, 2021. The trial court denied the motion after a hearing five days later.

[7] The jury trial began on November 18, 2021. The jury acquitted Bauman of the aggravated battery charge but convicted him of operating a vehicle while intoxicated resulting in serious bodily injury. The trial Court sentenced Bauman to five years executed in the DOC. This appeal ensued.

## Discussion and Decision

[8] Bauman contends that the trial court abused its discretion when it admitted the results of the warrantless blood draw. "Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion." *Neeley v. State*, 70 N.E.3d 866, 870 (Ind. Ct. App. 2017) (citing *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997)). "We reverse only when the decision is clearly against the logic and effect of the facts and circumstances." *Id.* (citing *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997)). "We may affirm a trial court's

decision regarding the admission of evidence if it is sustainable on any basis in the record." *Id*. (citing *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998)).[8]

[9] "In general, the Fourth Amendment prohibits warrantless searches." *Hannoy v. State*, 789 N.E.2d 977, 982 (Ind. Ct. App. 2003) (citing *Edwards v. State*, 762 N.E.2d 128, 132 (Ind. Ct. App. 2002), *trans. denied*). "If the search is conducted without a warrant, the burden is upon the State to prove that, at the time of the search, an exception to the warrant requirement existed." *Id*. "Searches conducted without a warrant are per se unreasonable subject to a few well-delineated exceptions." *Id.* (citing *Johnson v. State*, 766 N.E.2d 426, 432 (Ind. Ct. App. 2002), *trans. denied*). "A warrantless search of one's person ordinarily must also be supported by probable cause." *Id*. (citing *Conwell v. State*, 714 N.E.2d 764, 766 (Ind. Ct. App. 1999)). It has long been settled that the "compulsory administration of . . . blood test[s] . . . plainly constitute searches of 'persons'" within the meaning of the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966).

[10] There are, as we have indicated, numerous judicially created exceptions to the warrant requirement. *See, e.g.*, *Wilkinson v. State*, 70 N.E.3d 392, 402 (Ind. Ct. App. 2017) (need to provide medical assistance; plain view doctrine; automobile exception; search incident to arrest). Here, the State points to the

---

[8] Bauman did not appeal the denial of his motion to suppress, and so his arguments here are properly framed as targeted to the trial court's decision to admit the blood draw results at trial. *See, e.g.*, *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013).

consent exception, wherein the warrant requirement may be waived with the search-subject's consent. *Temperly v. State*, 933 N.E.2d 558, 563 (Ind. Ct. App. 2010) (citing *Krise v. State*, 746 N.E.2d 957, 961 (Ind. 2001)). "The voluntariness of a consent to search is a question of fact to be determined from the totality of the circumstances." *Id*. (citing *Navarro v. State*, 855 N.E.2d 671, 675 (Ind. Ct. App. 2006)). "A consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law." *Id*. "To constitute a valid waiver of Fourth Amendment rights, a consent must be the intelligent relinquishment of a known right or privilege." *Id*. "Such waiver may not be conclusively presumed from a verbal expression of assent unless the court determines, from the totality of the circumstances, that the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld." *Id*.

[11] Thus, as a threshold matter, if Bauman validly consented to the blood draw, his arguments about the constitutionality of the blood draw are moot. Bauman argues that his consent was not valid because it was a result of: (1) an unconstitutional ultimatum; (2) a violation of his right to counsel; and (3) an illegal detention. We disagree.

[12] > The "totality of the circumstances" from which the voluntariness of a detainee's consent is to be determined includes, but is not limited to: (1) whether the defendant was advised of his *Miranda* rights prior to the request to search; (2) the defendant's degree of education and intelligence; (3) whether the defendant was advised of his right not to consent; (4) whether the detainee has

previous encounters with law enforcement; (5) whether the officer made any express or implied claims of authority to search without consent; (6) whether the officer was engaged in any illegal action prior to the request; (7) whether the defendant was cooperative previously; and (8) whether the officer was deceptive as to his true identity or the purpose of the search.

*Lamonte v. State*, 839 N.E.2d 172, 175 (Ind. Ct. App. 2005) (citing *Camp v. State*, 751 N.E.2d 299, 304 (Ind. Ct. App. 2001), *trans. denied*). The record indicates that Bauman was advised of his *Miranda* rights. The form advisement based on the implied consent statute indicated that Bauman could refuse the search by explaining to him the administrative penalty that would result if he did so. There is no evidence to suggest that law enforcement officers made any claims to search without consent, or that they acted deceptively or in bad faith. Bauman was cooperative the entire time (save for initially misleading officers about the accident). The record reflects that Bauman has a high school diploma. And the pre-sentence investigation report suggests that Bauman has had plenty of previous encounters with law enforcement, including one for which he was charged with operating while intoxicated. We conclude that, on balance, the totality of the circumstances demonstrates consent that was voluntarily and freely given.

[13] Bauman does not directly address these commonly enumerated factors, opting instead to focus on factors that he believed contributed to a coercive atmosphere. With respect to Bauman's suggestion that his consent resulted from an unconstitutional ultimatum, we observe that we have repeatedly

"rejected a contention that the defendant's consent was a product of coercion because he had been informed of the possible penalty for refusing a chemical test under the implied consent law." *Temperly*, 933 N.E.2d at 563 (citing *Johnson v. State*, 450 N.E.2d 123 (Ind. Ct. App. 1983)); *see also Cochran v. State,* 771 N.E.2d 104, 108 (Ind. Ct. App. 2002). Here, as in *Johnson*, "there was no evidence that the officer had made any promises or threats, used or threatened any physical force, or engaged in any deliberate trickery . . . ." *Id*. So far as we can tell, this was a garden variety application of the implied consent statute. To the extent that Bauman challenges that statute more directly, his arguments go to the matter of probable cause. Probable cause, in turn, is a significant consideration only if we are to reach the question of whether the search was reasonable, which we do not. Consent to a search obviates the constitutional guardrails which ordinarily circumscribe that search. *Pirtle v. State*, 323 N.E.2d 634, 639 (Ind. 1975) ("A person who consents to a search gives up all these [constitutional] protections and subjects himself to a general search without probable cause.").

[14] Bauman's other arguments related to the blood draw must suffer the same fate. Potential deficiencies with Bauman's detention, and the fact he was not allowed to speak with his attorney may be probative of the reasonableness of the search, but they have little impact, in our view, on the question of whether Bauman's consent was voluntarily given. That impact is insufficient to alter our conclusion that the totality of the circumstances reveals valid consent. And that

conclusion is no less potent under the Indiana Constitution: Bauman's state constitutional arguments, too, must fail.[9]

[15] Finally, we briefly address Bauman's secondary argument. Bauman argues that the trial court abused its discretion by permitting a lay witness to testify—over objection—to his opinions regarding the intent of the drivers: Bauman and the motorcyclist. Bauman points to Indiana Rule of Evidence 704(b), which provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." This court "review[s] the admission of evidence only for an abuse of discretion[,]" which is to say "when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. However, a ruling is reviewed de novo when it turns on the interpretation of a rule of evidence." *Weed v. State*, 192 N.E.3d 247, 249 (Ind. Ct. App. 2022) (citing *Warren v. State*, 182 N.E.3d 925, 932 (Ind. Ct. App. 2022); *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018)). Bauman claims that the witness's opinion that "the person riding the motorcycle was scared and wanted out and the person driving the truck was trying to take him out[,]" was

---

[9] We pause to note that, while our Supreme Court has made clear that the test announced in *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005), must be applied to all searches and seizures, and not just those of trash containers, *see, e.g., Watkins v. State,* 85 N.E.3d 597, 600 (Ind. 2017), this court has expressed divergent views with respect to whether the *Litchfield* analysis is necessary where we find a valid exception to the warrant requirement. *See, e.g., Isley v. State*, 202 N.E.3d 1124, 1134 (Ind. Ct. App. 2023) (May, J. concurring in part). As we have noted, the existence of valid consent does away with the need to determine whether a search is reasonable under either the federal or state constitutions. Accordingly, we do not undertake a *Litchfield* analysis here.

an improper opinion of intent.[10]  Tr. Vol. II p. 87.  Bauman cites numerous examples in which Indiana courts have held that the mere fact that a witness has observed an actor does not permit the witness's lay opinion as to the actor's intent.[11]

[16]  We find that the argument is of no moment, for any error arising from the admission of the opinion testimony is necessarily harmless.  Such testimony would be probative of the *mens rea* associated with the aggravated battery charge, but Bauman was acquitted on that count.  He, thus, suffered no prejudice as a result of the lay witness testimony.  "An error is harmless when it results in no prejudice to the 'substantial rights' of a party."  *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (citing *Camm v. State*, 908 N.E.2d 215, 225 (Ind. 2009); Ind. Trial Rule 61.5).  "While there are important contextual variations to this rule, the basic premise holds that a conviction may stand when the error had no bearing on the outcome of the case."  *Id*.  We conclude that the admission of the testimony was harmless, and Bauman's argument on this point is, accordingly, unavailing.

[17]  Affirmed.

---

[10] The witness also testified that Bauman "[w]as pushing the motorcycle down the road, that the truck "chased" the motorcycle." Tr. Vol. II pp. 84, 87.

[11] *Weaver v. State*, 643 N.E.2d 342 (Ind. 1994); *Jackson v. State*, 728 N.E.2d 147 (Ind. 2000); *Gall v. State*, 811 N.E.2d 969 (Ind. Ct. App. 2004).

May, J., and Brown, J., concur.